ENTERED
CLERK, U.S. DISTRICT COURT
JAN 17 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELITE ALUMINUM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KATHY TROUT, and SQUIRREL HOLLOW ENTERPRISES d/b/a DURAFORM BUILDING PANELS,<br><br>Defendant. | CASE NO. CV-06-5664-SGL (OPx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

Elite Aluminum is the owner, by assignment, of United State Patent No. 5,502,939 ("the '939 patent"), a patent covering an interlock mechanism for composite aluminum insulating modular panels – consisting of a foam core covered by metal facing made of aluminum — that are used for various construction purposes, such as building exterior walls and roofs for patios and room additions. Elite's patented interlock mechanism allows for locking and unlocking of aluminum panels both during and after installation, a process that was previously difficult or impossible to manage without damaging the panels themselves. As explained in the background to the '939 patent, the prior art utilized a "straight in" method for joining the panels together (meaning that the panels were joined by laterally pushing one panel into the other panel that was already installed) which was

1  disadvantageous when it came time to disassemble the panels if there was limited
2  space:

> [The prior art of panel [interlock] design] disclose an
> interlocking panel that produces a very tight lateral
> interlock between contiguous panels but which permits
> up and down movement of contiguous panels when they
> are walked upon. Its structure limits its versatility
> because adjacent panels can be interlocked with only
> one type of interlocking procedure; they must be pushed
> straight in toward one another. More particularly,
> contiguous panels are first positioned in a common
> plane and then interlocked by pushing the panel to be
> installed into engagement with the already-installed
> panel. This "straight in" method is disadvantageous
> where space is limited because both panel s must be
> positioned in a common plane as aforesaid. When the
> panels are so interlocked, they cannot be disassembled
> by pulling the panels apart from one another.
> Disassembly is possible if space permits lateral sliding of
> the panels.

(Compl., Ex. B). Another interlock method, the "rock and lock," then in existence promised a means to circumvent the disassembly problem. This method operated by "positioning a first panel in a first plane, positioning a second panel contiguous thereto at an angle such as forty five degrees relative to the plane of the first panel, bringing the two panels together, and [then] lowering the second panel into the same plane as the first panel while pressing said second panel toward the first panel ." (Id.).

The invention contained in Elite's '939 patent sought to fill this void in the marketplace by providing for a design that combines these two interlocking methods, thereby gaining the tightness in the connection provided by the "straight in" method while at the same time maintaining the versatility for disassembly provided by the "rock and lock" method. As explained in the abstract to the '939 patent, Elite's panel operates as follows:

> Modular panels having foam cores covered by metal skins are
> interlocked to one another by complementally formed bends in the
> metal skins. A flat is formed in one of the metal skins to introduce
> flexibility and play into the interlocking mechanism, and both interlocking
> skins have a transversely extending bend formed in them that makes a
> line of contact with the mating interlocking skin to reduce the friction
> between them and to allow lateral movement of the interlocking panels.

2

> The play and flexibility introduced by the flat enable adjacent panels to be interlocked to one another by a straight-in movement and by an angular movement known as a rock and lock.

(Aff. Barry Haley Ex. A). The manner in which the metallic skins are shaped to form this combination interlock design is illustrated in Figure 1 of the patent:



Fig. 1

In the complaint, Elite alleges that Squirrel Hollow has "directly, indirectly, or contributorily or by inducement" infringed the claims of the '939 patent by producing a "knock-off" product that copies Elite's design, and that such infringement has caused reputational injury and other damages to Elite. (Compl. ¶¶ 3, 18).

Presently before the Court is Elite's motion for a preliminary injunction.

Determination of whether to grant a preliminary injunction requires the assessment of four factors: "(1) [T]he likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." Oakley Inc. v. Sunglass Hut International, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003). The parties' attention in their papers is focused most heavily on the first factor.

Assessment of the likelihood Squirrel Hollow's product infringes Elite's patent requires a two-step analysis — "First, the court determines the scope and meaning

of the patent claims asserted [and second,] the properly construed claims are compared to the allegedly infringing device" to determine whether "every claim limitation or its equivalent be found in the accused device." Id. at 1339. An injunction should not issue "if the party opposing the injunction raises 'a substantial question concerning infringement . . ., meaning that it asserts a defense that the party seeking the injunction cannot prove lacks substantial merit." Id. at 1340.

Squirrel Hollow argues that, in four respects, its panels do not have all the limitations contained in claim one to Elite's patent and therefore Elite cannot show a likelihood of infringement. (Surreply at 4). Claim 1 of the patent reads as follows:

> 1. A panel construction, comprising:
>
> a foam core having a top surface and a bottom surface;
> said foam core having a first edge and a second edge;
> said first edge being sculpted and forming an outwardly extending protrusion;
>
> said second edge being complementally sculpted and forming an inwardly extending recess for receiving said protrusion;
>
> said protrusion having a flat formed in an outermost edge thereof, said flat being normal to said top and bottom surfaces;
> said protrusion further including a top and bottom inclined wall that extend inwardly from opposite ends of said flat toward said top and bottom surfaces, respectively, at a predetermined angle of inclination;
>
> said protrusion further including a top and a bottom channel formed in an innermost end thereof, each of said channels having a flat bottom parallel to said top and bottom surfaces of said foam core, and each of said flat bottoms being spaced further from the respective top and bottom surfaces of said foam core than inward-most ends of said first and second inclined walls;
>
> said top and bottom surfaces of said foam core being covered by a top and a bottom metallic skin, respectively;
>
> a first end of said top and bottom metallic skins having plural bends formed therein to overlie said channels and a preselected extent of said inclined walls contiguous to said channels;
>
> a second end of said top and bottom metallic skins each having a first unbent part that extends in cantilever relation relative to said second edge of said foam core, said first unbent part of said top and bottom metallic skins being disposed in parallel relation to one another, a second part bent toward one

4

another at a substantially ninety degree angle, each of said second parts having an extent less than the depth of said channels, a third part bent toward one another and inwardly toward said second edge of foam core, said second and third parts having a combined extent substantially equal to the depth of said channels, a fourth part bent toward said top and bottom surfaces of said foam core, respectively, and inwardly toward said second edge of said foam core, a fifth part disposed in parallel relation to said top and bottom surfaces of said foam core, said fifth part extending toward said second core edge by a predetermined distance and forming a flat, and a sixth part bent toward said second edge of said foam core at an angle substantially complementary to said angle of inclination of said inclined walls of said protrusion.

(Decl. Lawerence Hadley, Ex. A).

As Elite rightfully notes, the elements in Claim 1 "are mechanical and geometric" in nature, describing in great detail how the locking channels between the two parts of the panel are shaped and interface with one another. (Mot. Preliminary Inj. at 7). Squirrel Hollow's argument is directed to four elements in Claim 1 concerning the shape of the interlocking metallic skins. Essentially, Squirrel Hollow argues that these differences between its panels and those of Elite are dictated by the peculiar weather (i.e., temperature extremes in the desert and mountains) and natural conditions (i.e., earthquakes) found in California where its product is sold. Specifically, Squirrel Hollow asserts that the variations between its panels and those made by Elite (e.g., "the gap between the skin and the channel") are meant to provide its panels more flexiblility "to move during an earthquake and to expand and contract due to weather," a quality it asserts Elite's panels do not have on account of these differences in the two's product design. (Opp. at 5 (noting that differences "allows the skin to flex toward the channel which in turn allows the joined panels to flex").

A. CLAIM CONSTRUCTION

In construing the claims in a patent courts must give the words in a claim its "ordinary and customary meaning" as defined by how that term is understood "to a person of ordinary skill in the art in question at the time of the invention." Phillips v.

Awh Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). It is important to remember that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specifications." Id. Moreover, the Federal Circuit has recognized that in some instances "the ordinary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent even to lay judges" such that "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314.

If the ordinary meaning of a claim term cannot be readily ascertained, courts construe the term according to settled claim construction rules: Looking to term in the context of surrounding claim language, then the specification accompanying the patent, and finally consulting dictionaries. Id. at 1315, 1322.

Upon review of the parties' papers, the Court finds that a substantial question exists as to whether Squirrel Hollow's panels infringe at least two limitations contained in claim 1 to the '939 patent such that issuance of a preliminary injunction at this point is unwarranted.

    1.    Substantially Ninety Degree Angle

Claim 1 in the '939 patent requires "a second part bent toward one another at a substantially ninety degree angle." In contrast, the corresponding portion in Squirrel Hollow's panel interlock purportedly forms only a seventy-five degree angle. (Decl. Russell Palley ¶ 28).

Given that the patent uses the term "about" elsewhere, (see claim 3 ("The panel construction of claim 1, wherein said third and fourth parts of said second end of said metallic skins are bent with respect to one another by about ninety degrees") and claim 4 ("said fourth and sixth part of said second end of said metallic skins are disposed at an angle of about ninety degrees")), Squirrel Hollow construes this element in the claim as requiring that the bend be "very close to" a

ninety degree angle. To further substantiate its argument, Squirrel Hollow notes that the drawings and specifications in the patent show a ninety degree angle with no ranges of permissible angles discussed. Although noting that the claim does not delineate how large of an angular difference would constitute a substantially ninety degree angle, Squirrel Hollow argues that common sense would dictate that an "angle of the corresponding part of [its] panel is about 75 degrees" is not very close to a 90 degree angle. (Decl. Russell Palley ¶ 28 & Ex. F; Surreply at 6).

All that Elite offers in rebuttal to this argument is that Squirrel Hollow's construction reads out the term "substantially" from the claim language (an untenable argument given that Squirrel Hollow's argument acknowledges the term but reads it in the context of other claim language, namely, the use of the term "about", to mean "very close to" – a difference of fifteen degrees is not very close to something else) and then simply states, without elaboration, that a seventy-five degree angle falls within the doctrine of equivalents.

"Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.'" Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1357 (Fed. Cir. 2005). The doctrine arose out of recognition that "the language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty." Id. at 1358. Without recognition of this point, "[u]nimportant and insubstantial substitutes for certain elements could defeat the patent." Id. Thus, in considering the doctrine, courts "must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." Id. at 1359.

There are two problems with Elite's invocation of the doctrine of equivalents.

First, nowhere in its complaint did Elite once make mention that Squirrel Hollow's panel infringed its patent by virtue of it having only minor or insubstantial variations to the claims in its patent. Instead, Elite asserted that Squirrel Hollow's panels were "knock offs" of its panels, meaning that they were exact copies or duplicates of its panels. Cf. Paul M. Janicke & LiLan Ren, Who Wins Patent Infringement Cases?, 34 AIPLA Q.J. 1, 40 (2006)(equating allegations of "[d]irect 'knock off' type infringement" with that of literal infringement). Second, nowhere in its pleadings has Elite sought to engage in the required "multi-factored analysis" to demonstrate that Squirrel Hollow's use of a seventy-five degree angle for the part of the panel in question is the functional equivalent of the ninety degree angle noted in the claim language. See Freedman, 420 F.3d at 1359 (noting "the multi-factored analysis required by the doctrine of equivalents"); Interactive Pictures Corp. v. Infinite Pictures, Inc., 274 F.3d 1371, 1376 (Fed. Cir. 2002)("Determination of infringement by equivalents is an issue of fact"); Kraft Foods, Inc. v. International Trading Co., 203 F.3d 1362, 1371 (Fed. Cir. 2000)("Equivalence is shown by evidence that the accused device contains an element that is not substantially different from any claim element that is literally lacking or that the claimed limitation and the accused component 'perform[] substantially the same function in substantially the same way to achieve substantially the same result'"). Elite has not proffered any evidence as to what function the ninety degree angle serves or demonstrate how that same function is served even with the purported minor variance found in Squirrel Hollow's panel. See Freedman, 420 F.3d at 1358 (recognizing that "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation"). Towards that end, Squirrel Hollow has tendered the declaration of a patent expert, Mr. Barry Haley, who opines that "[i]f it [i.e., the ninety degree angle,] was not important and a requirement, the patent could have been claimed in a way that expands the angular relationships required in the claim." (Decl. Barry Haley ¶ 17).

Finally, at oral argument, counsel for Elite disputed that the relevant angle in Squirrel Hollow's panel interlock was seventy-five degress, claiming instead that it was more like eighty-five or eighty-seven degrees. When pressed by the Court whether Elite had proffered any proof to substantiate this factual contention, counsel admitted that it had not. Without anything more than the argument of counsel disputing the factual predicate of Squirrel Hollow's defense to this element in the claim, the Court finds that a substantial question exists as to whether Squirrel Hollow's panel infringes the '939 patent.

2. Forming a Flat

Finally, Claim 1 in the '939 patent requires a "fifth part extending toward said second core edge by a predetermined distance and forming a flat." Squirrel Hollow contends that the relevant portion of its panel nowhere "form[s] a flat, but rather is rounded." (Decl. Russell Palley ¶ 29 & Ex. F). Elite simply disputes that the relevant portion of Squirrel Hollow's panel is rounded, claiming that "observing the picture of defendant's accused products . . . plainly shows that the fifth part in defendant's accused products are flat for at least some portion," and then directs the Court's attention to a picture of Squirrel Hollow's panels provided by Elite's attorneys. (Reply at 7 & Decl. Lawrence Hadley, Ex. F). No doubt the pictures of Squirrel Hollow's panels provided by the parties on this point differ — the one submitted by Squirrel Hollow reveals that the relevant aspect of the interlock remains rounded throughout, whereas the one submitted by Elite reveals that at one limited point the relevant portion appears to form a flat. (Compare Decl. Lawerence Hadley, Ex. F with Decl. Russell Palley, Ex. F). Moreover, this difference is carried over in the exemplars provided of Squirrel Hollow's product by the parties. Admittedly, the Court is well within its right to resolve this dispute in rendering a decision on a motion for a preliminary injunction. See New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 884 (Fed. Cir. 1992)("A credibility determination is well within the court's province when ruling on a

9

preliminary injunction motion"). However, given the limited nature of the information submitted by the parties to support their competing contentions (competing declarations and exemplars that each submit is the real McCoy) to convince the Court which mutually exclusive proposition to adopt, the Court is in no position at this time to gainsay which side is correct. In the absence of convincing proof on this point, Elite's argument that Squirrel Hollow's panel forms a flat, at least for some discernible portion. falls flat. Absent resolution of this question in Elite's favor, the exemplar (and corresponding picture) submitted by Squirrel Hollow of its panel places a substantial question as to whether its panel infringes this element in claim 1 to the '939 patent.

Elite seeks to repackage this point when it argues that, even if the relevant portion of Squirrel Hollow's panel is rounded, the element in the patent only requires that it form a flat, which Elite reads to mean that the panel is "flat for at least some portion," not that the panel is "completely flat." (Reply at 7). The problem again with this argument is that Squirrel Hollow has come forward with sufficient information (which the Court, at least at this point, is not prepared to disregard) that its panel is fully rounded and never forms a flat for any portion of the relevant configuration. At oral argument, Elite's counsel expanded the argument even further by contending that so long as Squirrel Hollow's panel interlock design "substantially" forms a flat then it infringes this element of the claim. There is simply no basis in the claim language for the importation of the adjective "substantially" in relation to the formation of a flat. The pertinent portion of the claim itself is silent on there being any wiggle room on this point — the relevant part of the panel interlock design must form a flat, not substantially one.

Given that a substantial question exists with respect to some of the elements in claim one of the '939 patent — notably, the 90 degree angle and the flat — Elite has not demonstrated a likelihood of success on its patent infringement claim at this stage in the litigation.

10

Accordingly, the Court hereby **DENIES** the motion for a preliminary injunction. See National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004)("a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits").

IT IS SO ORDERED.

DATE: 1-16-07.

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE